UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CARLYN M. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:10CV1162 RWS |
| | ) | |
| SECURITAS SECURITY | ) | |
| SERVICES USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Carlyn Johnson was employed as a security guard for Defendant Securitas

Security Services USA, Inc. Securitas terminated Johnson's employment after he was involved

in a vehicular accident at work. Johnson asserts in his lawsuit that was he fired because of his

age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 - 634.

Securitas has moved for summary judgment. Because Johnson has failed to establish a genuine

issue of fact that creates a reasonable inference that he was the victim of employment

discrimination, I will grant Securitas' motion.

### *Legal Standard*

Summary judgment is appropriate if the evidence, viewed in the light most favorable to

the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center,

160 F.3d 484, 486 (8th Cir. 1998)(citing Fed. R. Civ. P. 56(c)). The party seeking summary

judgment bears the initial responsibility of informing the court of the basis of its motion and

identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and

admissions on file which it believes demonstrates the absence of a genuine issue of material fact.
Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on his pleadings but must produce sufficient evidence to support the existence of the essential elements of his case on which he bears the burden of proof. Id. at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1113 (8th Cir. 2004).

Direct evidence of employment discrimination is rare, therefore, most cases rely on circumstantial evidence. In the absence of direct evidence of discrimination, courts employ the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)(Title VII case).[1]

Under the burden-shifting analysis, the plaintiff must first establish a prima facie case of intentional discrimination. McDonnell Douglas, 411 U.S. at 802; Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994). If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. 411 U.S. at 802. The defendant need not persuade the court that the articulated reason was the basis of the employer's action; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993).

Upon the proffer of such evidence, the presumption of discrimination established by the

---

[1] See Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1332 (8th Cir. 1996)(applying McDonnell Douglas to an ADEA claim)

prima facie case "simply drops out of the picture." Id. at 510-11. The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination. Aucutt, 85 F.3d at 1316. A rejection of the employer's proffered non-discriminatory reason by itself or combined with elements of the prima facie case may be enough to establish, but does not compel, an inference of intentional discrimination. St. Mary's Honor Center, 509 U.S. at 511.

The burden of proving discrimination remains on the plaintiff at all times. Id. at 515-16. It is not enough to merely discredit defendant's articulated reason for the adverse employment action. A plaintiff must always establish that the real reason for defendant's action was impermissible discrimination. Id.; see also Huston v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995). To avoid summary judgment, a plaintiff must present evidence that, when viewed in its entirety: (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory motive was a determinative factor in the adverse employment decision. Rothmeier v. Investment Advisers, Inc., 85 F.3d 1328, 1336-37 (8th Cir. 1996).

I note that in his brief in opposition to summary judgment Johnson cites to panel opinions of the United States Court of Appeals for the Eighth Circuit for the proposition that summary judgment should sparingly be granted in employment discrimination cases and is not proper in very close cases. The Eighth Circuit, sitting en banc, has rejected applying a more stringent summary judgment standard to employment discrimination cases. See Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8h Cir. 2011)("The panel statements asserting a different standard of review for summary judgment in employment discrimination cases are contrary to

Supreme Court precedent.")

### *Background*

Defendant Securitas provides on-site security guard services to customers throughout the country. Plaintiff Carlyn Johnson was hired as a security guard in April 2003 by Securitas' office in St. Louis, Missouri. Johnson was 70 years old when he was hired. Johnson was employed as a utility officer. A utility officer is not assigned to a particular customer nor does he report to a specific manager. When a regular officer is sick or on a leave of absence, a manager at Securitas will contact a utility officer and ask if the officer is available and wants to work a shift. The utility officer does not work a set schedule, instead he fills in for different customers in different shifts.

Rail Logistics is a customer of Securitas. Securtias was hired by Rail Logistics to provide surveillance security to one of its sites from 4:00 p.m. on Saturdays to 8:00 a.m. on Sundays and from 4:00 p.m. on Sundays to 6:00 a.m. on Mondays. In January 2009, Robert Hesse, a Field Service Manager for Securitas, contacted Johnson and asked him if he would be able to cover the shift at Rail Logistics from Saturday afternoon to Sunday morning on January 24 and 25, 2009. Johnson had worked this shift the previous weekend and had worked at the same site numerous times. Johnson agreed to cover the shift.

Right before Johnson reported to work at the Rail Logistics site on January 24, 2009, he had just completed consecutive shifts of thirteen hours at the Radisson and ten hours at MERS Goodwill without rest. (Pl.'s Dep. Doc. # 76, Ex. 1 at 82 - 83) At approximately "a little after 5:30 a.m." on Sunday morning, January 24, 2009, Johnson was involved in a vehicular accident at the site. (Id. at 94) Johnson testified at his deposition that he tried to call his office to report

the accident three or four times between 5:45 a.m. and a little before 7:00 a.m.  He believes he was unable to get a signal on his cell phone at the site of the accident so he was unable to complete the calls.  He left the Rail Logistic's site because he thought his shift ended at 7:00 a.m.  As he drove to Securitas office he called his office and was able to reach a manager shortly after 7:00 a.m.  (Id. at 95 - 101)  He spoke to Field Service Manager Charlie Bunch.  Johnson told Bunch that he had hit a parked Rail Logistics 18-wheeler trailer with his Securitas truck.  Johnson testified at his deposition that foot slid off the brake of his truck and it rolled *up* a short incline and slid under the trailer.  (Id. at 101-103, 137-138)  Johnson was not injured in the accident.  Securitas received an estimate of $2,300 to repair the damage to its truck including a cracked windshield and bent hood.  Johnson testified that he finished the call to Bunch while in Securitas's parking lot and that Bunch told him to go home and Bunch would call him later.  (Id. at 101)

Later that morning, Bunch called Hesse who was the field service manager responsible for the Rail Logistics account.  Hesse told Bunch that Johnson's shift ended at 8:00 a.m. not 7:00 a.m.  Later that day Bunch also called, Sherri Parker, Securitas' Area Human Resources Manager, to report the accident.  Bunch called Johnson and told him to return to the office for a blood test.  A blood test is mandatory after an accident to determine whether the driver had drugs or alcohol in his system.  Johnson returned to the office and took a blood test between 9:00 a.m. and 10:00 a.m.  The record indicates that the test was negative.

The next day, Monday January 26, 2009, Parker began an employee investigation of the accident.  Parker had joined Securitas as the human resources manager only a month before the accident and had never met Johnson.  Hesse told Parker that Johnson's shift did not end until

8:00 a.m. on the day of the accident. Bunch told Parker that the accident had happened at 5:40 a.m. but that he did not hear from Johnson until around 7:00 a.m. Bunch also told Parker that Johnson had already left the Rail Logistic's site at the time Johnson called Bunch at 7:00 a.m.

Parker called Johnson on Wednesday, January 28, 2009, and told him she was investigating the events surrounding the accident. She told Johnson that he needed to come to the office to speak with her in person. Johnson declined to come to the office so Parker took his statement over the phone.[2] He told Parker the time of the accident and that he left the site at 7:00 a.m.

Parker told Johnson that he had violated company policy by leaving his post before his shift ended at 8:00 a.m. She also told him that he had not reported his accident immediately and she noted that he refused to come to the office and speak with her as part of her investigation. Parker states that at the end of the call she terminated Johnson's employment. Johnson was 76 years old at the time.

On the termination paperwork Parker noted Johnson was in an accident and left his post before the end of his shift. Parker also wrote on the paperwork that Johnson refused to come into the office for an interview. Parker states in an affidavit that when she fired Johnson she believed that he left his post early without permission, that he could have notified the office of the accident sooner, and that he failed to cooperate in her investigation of the accident, all in what Parker believed to be in violation of company policies. (Parker Aff. Doc. # 67, Ex. B at 7) She states that she did not know how old Johnson was when she fired him and was never told by

_____

[2] In his deposition Johnson acknowledged that he never met Parker. He asserts the reason he refused Parker's request to come to the office was that Parker terminated him and then wanted him to come to the office. He didn't see that any point in going to the office after he had already been terminated.

anyone that Johnson was too old to work or should not be a security guard.  (Id. at 6 - 7)  Parker

also states that she was the only person who made the decision to fire Johnson.  Securitas has not

hired anyone to replace Johnson because Securitas no longer employs utility officers.  (Id. at 6)

Johnson filed this case alleging that, contrary to Securitas' position, his employment was

terminated based on his age in violation of the Age Discrimination in Employment Act (ADEA),

29 U.S.C. §§ 621-634.  Securitas has moved for summary judgment

*Analysis*

"The ADEA protects individuals aged 40 and over by prohibiting employers from

discharging or otherwise discriminating against such individuals with respect to their

compensation, terms, conditions, or privileges of employment on the basis of their age.  29

U.S.C. § 623(a).  In order to prove his claim, [a plaintiff] must show, by a preponderance of the

evidence, that age was the "but-for" cause of the challenged adverse employment action."  Haigh

v. Gelita USA, Inc., 632 F.3d 464, 468 (8th Cir. 2011).  Because Johnson has not presented

evidence of direct discrimination, his claims will be analyzed under the McDonnell Douglas

framework.

Johnson claims he was terminated from his job because of his age.  To establish a prima

facie case of age discrimination under the ADEA Johnson must show: (1) he was at least 40

years old; (2) he was terminated; (3) he was meeting his employer's reasonable expectations at

the time he was terminated; and (4) he was replaced by an individual who was substantially

younger.  Id.  When a plaintiff's job or duties are not reassigned to a specific person, a plaintiff

must satisfy the fourth element of the prima facie case by showing that age was a factor in the

employer's decision to terminate.  Hitt v. Harsco Corp., 356 F.3d 920, 924 (8th Cir. 2004).

Johnson was hired by Securitas when he was 70 years old and worked for the company until he was 76 years old. This fact implies that Securitas is amenable to employing older workers.

Securitas did not hire anyone to replace Johnson. In an attempt to establish the fourth element of a prima facie case, Johnson alleges that he was treated differently that similarly situated younger workers who were not terminated for violating Securitas' employment policies. He also asserts that Robert Hesse, a Field Service Manager for Securitas, was involved in the decision to terminate Johnson and that Hesse had made disparaging age related remarks to Johnson in the past.

Johnson's allegation that other younger employees were not similarly disciplined for similar work violations is without any evidentiary support cited in his memorandum in opposition to summary judgment. Johnson makes this assertion but does not offer the circumstances or the name of any employee treated more favorably than Johnson. (Doc. # 75 at 19) Nor does his opposition brief cite to the record where this information may be found. To the extent such information might possibly be found somewhere in the record, I decline to search through the case file in an attempt to find evidence which might support Johnson's claim. The Court is not under an obligation to sift through the record in a quest to uncover and speculate on evidence of genuine issues of material fact that would defeat a motion for summary judgment. Barge v. Anheuser-Busch, Inc., 87 F.3d 256, 260 (8th Cir. 1996) (citing White v. McDonnell Douglas Corp., 904 F.2d 456 (8th Cir. 1990)). It is Johnson's burden to present evidence to establish a prima facie case of discrimination.

Johnson's allegations that Robert Hesse made age related comments about Johnson in his opposition brief suffers from the same lack of citation to the record to support such allegations.

Johnson does not cite to any part of the record to support this claim in his opposition brief.

I have reviewed Johnson' statement of uncontroverted facts which refers to some of these allegations including Hesse's calling Johnson Superman. It is undisputed that Hesse referred to Johnson as "Superman" on occasion. In his deposition, Hesse stated that Johnson used to brag about his indestructibility and how strong he was so Hesse would call him Superman on occasion. In 2007, Johnson was hospitalized twice for some unspecified illness. After Johnson was discharged from the hospital the first time, Hesse jokingly told Johnson that he should "hang up his cape" because Johnson's illness had shown that he was not indestructible any more. (Hesse Dep. Doc. # 76, Ex. 2 at 100-101). Hesse repeated the "hang up the cape" comment to Johnson's wife when Johnson was admitted to the intensive care unit in a second hospital stay. (Id. at 101-103) In conversations with other field service officers, at unspecified times, Hesse said he would comment that Johnson should hang up his cape because he was working past his limitations in continuing to accept assignments. (Id at 104-106) Johnson also testified that Hesse made the "hang up his cape" remark on a number of occasions over an unspecified three year period including on the day he was fired. (Id. at 175-176)

Johnson also testified at his deposition that, at some unspecified time, Hesse told Johnson the he was too old to be working. (Pl.'s Dep. Doc. # 76, Ex. 1 at 176)

Johnson asserts in his opposition brief, again without any citation to the record to support this claim, that Hesse was involved in the decision to terminate Johnson. Johnson asserts that Hesse's previous comments about his age show age animus in the decision process.

Hesse's reference to Johnson as Superman and his comments that Johnson should "hang up his cape" are a age-neutral statements that do not suggest a discriminatory animus based on

age. Hesse's initial statements that Johnson should hang up his cape were made after Johnson's hospitalizations. His later comments were made because Hesse felt Johnson was working past his limitations. These comments do not reflect that Hesse had animus towards Johnson because of his age.

Whether Hesse was a decision maker in Johnson's termination is an issue of some contention. Johnson supports this contention by pointing to Securitas' response to Johnson's first set of interrogatories, dated February 3, 2011, which stated that Parker, Hesse, and Bunch made the decision to terminate Johnson. However, in a supplemental answer to the interrogatories, dated March 3, 2011, Securitas stated that Parker was the solely responsible for the decision to fire Johnson.[3] Johnson asserts that these opposing responses create an issue of material fact for a jury to determine who were the decision makers in Johnson's termination.

It is undisputed that Parker consulted with Hesse and Bunch to collect information regarding the circumstances surrounding Johnson's accident. Securitas' position is that Parker solely made the decision to fire Johnson and that the first interrogatory response including Heese and Bunch in the decision was a misstatement. Even if it is assumed that Hesse was a decision maker, his statements to Johnson to hang up his cape is an age-neutral comment that does not support a discriminatory animus based on age. Assuming that Hesse had told Johnson in the unspecified past that he was too old to keep working, a claim disputed by Hesse, such comments were stray remarks, remote in time, and unrelated to the decision to terminate Johnson. Herrero v. St. Louis University Hosp., 109 F.3d 481, 484 (8th Cir. 1997)(remarks regarding age "may

---

[3] Parker, Hesse, and Bunch all testified in their depositions that Parker was the sole decision maker in Johnson's termination.

constitute evidence of impermissible motive only when they are made by decisionmakers in the termination process and reflect a discriminatory animus). As a result, Johnson has failed to present a material dispute of fact regarding Hesse's past remarks.

Johnson also asserts that he has provided proof of age animus because Parker must have known how old he was when she fired him. Johnson assumes Parker knew his age because, at a minimum, she must of had access to his personnel file. These assumption are contradicted by Parker who testified at her deposition that she did not know Johnson's age when she made the discision to terminated his employment. (Parker's Dep. Doc. # 76, Ex. K at 42, Parker's Declar. Doc. # 76 Ex. B at 6) Moreover, whether Parker knew Johnson's age does not prove age animus. No court has held that simply knowing an employee's age at the time the employee is terminated is evidence of age animus.

Even if Johnson had established a prima facie case of discrimination, Securitas has articulated a legitimate, non-discriminatory reason for Johnson's termination based on the circumstances surrounding the accident. Johnson asserts that Securitas' proffered reasons for his termination changed over time which creates an inference of pretext. I have reviewed the record presented by Johnson and I do not find Securitas' positions to be inconsistent. Johnson's attempt to prove age animus in his termination is based on speculation that age must have been the motivation factor. There is no evidence that Securitas' reasons for terminating Johnson was a pretext for discrimination. Johnson has failed to present evidence which would establish that age was the "but-for" cause of his termination. As a result, I will grant Securitas' motion for summary judgment

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Securitas Security Services USA, Inc.'s motion for summary judgment [Doc. # 65] is **GRANTED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 13th day of April, 2012.