# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2129
_____

Carlyn M. Johnson

*Plaintiff - Appellant*

v.

Securitas Security Services USA, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 16, 2013
Filed: August 26, 2013

_____

Before BYE, MELLOY, and SMITH, Circuit Judges.
_____

SMITH, Circuit Judge.

   Carlyn Johnson, aged 76, was fired from his position as a security guard for Securitas Security Services USA, Inc. ("Securitas") after he was involved in a car accident while on-duty and allegedly left his post early. Johnson filed an age discrimination claim under the Age Discrimination in Employment Act (ADEA) and the Missouri Human Rights Act (MHRA), asserting that Securitas had fired him

because he was an older worker. Johnson cited evidence that prior to his termination Securitas supervisors showed age animus through negative comments regarding Johnson's age. The district court granted summary judgment in favor of Securitas, concluding that Johnson did not present a prima facie case of age discrimination. We reverse.

I. *Background*

Johnson, who was born in 1932, initially worked as a Utility Officer for Pinkerton, a unit of Securitas. When Securitas changed Pinkerton's name to Securitas, Johnson applied for employment with Securitas and was hired at age 70. As a Utility Officer, Johnson was charged with providing on-site security guard services at various locations. Charlie Bunch, one of Johnson's supervisors, testified that between 2004 and 2009, he had never disciplined or written up Johnson for any performance issues and had never received any performance complaints. Bunch did testify that he gave Johnson one verbal warning for sleeping on the job.

Johnson testified that his supervisor, Robert Hesse, would comment that Johnson, "needed to hang up his Superman cape," was "too old to be working," and needed to retire. Hesse also compared Johnson to Hesse's 86 year old father, who Hesse stated had left employment. Hesse also testified that he suggested to other Securitas managers that they "prevent [Johnson] from working 50, 60 hours a week." Johnson also stated that he brought Hesse's comments to his supervisors' attention, including Hesse himself, Tony Simmons, and Charlie Bunch.

At approximately 5:30 a.m. on January 25, 2009, while on duty in a Securitas vehicle, Johnson collided with an unoccupied, parked truck. Johnson had worked approximately 20 consecutive hours. Johnson testified that he was told his shift was scheduled to end at 7:00 a.m. However, Securitas claims his shift did not end until 8:00 a.m. Following the accident, at approximately 7:00 a.m., Johnson telephoned Bunch, the on-call supervisor. Johnson testified that he had attempted to contact the

-2-

supervisor at approximately 5:45 a.m. but was unable to reach him due to bad cell phone reception. During this conversation, Johnson suggested that his shift ended at 7:00 a.m., and Bunch concurred, telling Johnson to go home and that Bunch would call him later. Bunch later testified that during this conversation, Bunch did not know when Johnson's shift ended and it was not until the next day that he was informed by Hesse that Johnson's shift actually ended at 8:00 a.m. Bunch completed an incident report. Initially, Bunch wrote that Johnson knew his shift ended at 7:00 a.m., but he later changed it to read that Johnson knew his shift ended at 8:00 a.m. During the investigation of the accident, Johnson took a blood test, wrote a statement regarding the incident, and spoke with Securitas's Human Resources Director, Sherry Parker, on the telephone.

On January 28, 2009, Parker, who had been with Securitas approximately a month, terminated Johnson. In response to an interrogatory, Securitas stated that Parker, Bunch, and Hesse participated in the decision to terminate Johnson. Parker testified that she did not know how old Johnson was at the time of his termination. Johnson testified, however, that Parker was aware of his age and confirmed Johnson's birth year when she terminated Johnson. Johnson's Personnel Action Form stated the reason for termination as "Violation of company code (page 87, #18)" and also stated Johnson "was in an accident and left post before end of shift @ 7 am[.] He called field service and stated he was in an accident and was on his way home."[1] Parker testified that the concurrent notes she took regarding Johnson's termination have since been destroyed.

Securitas responded to an interrogatory regarding whether Johnson's job performance met Securitas's standard for the position. Securitas responded that "[a]t various times during his employment, Johnson's job performance was unsatisfactory

---

[1]Company code #18 states, "Leaving post without proper relief or authorization from your supervisor or 'no call, no show.'"

inasmuch as he failed to perform the functions of the position in a manner that met Securitas' legitimate expectations." Parker asserted that Securitas had other grounds for terminating Johnson, including his failure to immediately report the accident to his supervisor and his failure to speak with Parker in person regarding the accident. Hesse testified that to his knowledge, since 2002, Johnson had not left his assignment early prior to the January 25, 2009 accident. On February 6, 2009, after Johnson contacted Securitas regarding his termination, Securitas responded through Vice President of Human Resources North Central Region, Laura Rysavy, stating,

> Your employment was terminated for violating company policy. The accident you claimed happen[ed] at 5:39 and yet you stated that you called a little after 7:00am and stated you were on your way home. The post shift did not end until 8:00am[.] The post was left early therefore violating company policy (page 87, #18 & #26). There are protocols to follow when employees have an accident and you did not follow through with proper procedure. We regret that your employment has to end in this way but the facts are clear that the employment termination was based on legitimate, non-discriminatory, credible business factors.

Securitas's company policy page 87, reason #26 is designated "Significant violation of a client's Post Orders."

After Johnson requested another review of his termination, Securitas replied in a February 27, 2009 letter from Rysavy. Rysavy indicated that Johnson was terminated because: (a) he was "involved in an at fault accident with the company vehicle while on duty"; and (b) "[f]ollowing the accident you did not follow proper procedure and, in fact, left the worksite prior to the end of your shift," thus violating company policy #18, as well as #24, "Unauthorized or improper use of Company or client vehicle."

Johnson filed an age discrimination claim with the Equal Employment Opportunity Commission (EEOC). Securitas responded to the EEOC that it had terminated Johnson because Johnson "did not immediately contact the Branch Manager after the accident had occurred," "was untruthful with Branch Manager, Charlie Bunch[,] regarding the time he had called to report the accident," "did not comply with the Company's investigation into the accident," and "left [his] post without proper relief." Securitas also stated that it was unaware of any employees, who had previously been terminated for either failing to report an accident immediately or failing to meet Parker face to face. Securitas provided information that at least two employees, Hesse and James Marion, were not terminated following automobile accidents. Hesse testified that in 2009, he struck another vehicle while on duty when attempting to avoid a deer. Hesse testified that he immediately contacted his supervisor and eventually went to the police station to file a police report. Matt Salviccio, a Field service manager, testified that while Marion was on duty, he drove a Securitas vehicle into a client's building, damaging the building and the vehicle. Salviccio testified that the accident occurred sometime between 2008 and 2011 and that Marion was reassigned to a nondriving post.

After receiving a "right to sue" letter from the EEOC, Johnson sued Securitas alleging that the company discriminated against him on the basis of age in violation of the ADEA and the MHRA. Securitas moved for summary judgment alleging that Johnson did not present a prima facie case of age discrimination. Johnson opposed Securitas's motion. The district court granted summary judgment in favor of Securitas, concluding that "Johnson ha[d] failed to establish a genuine issue of fact that create[d] a reasonable inference that he was the victim of employment discrimination." *Johnson v. Securitas Sec. Servs. USA, Inc.*, No. 4:10CV1162 RWS, 2012 WL 1247281, at *1 (E.D. Mo. 2012 April 13, 2012). The district court analyzed Johnson's age discrimination claim under the burden shifting framework of *McDonnell Douglas Corp. v. Green*, which requires the plaintiff to "establish a prima facie case of intentional discrimination," if there is no direct evidence of

discrimination. *Id.* at *1 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

The district court noted that Johnson was 70 years old when he was hired and that Securitas did not hire anyone to replace Johnson. *Id.* at *2. Johnson attempted to establish the fourth element of a prima facie case for age discrimination—age was a factor in Securitas's decision to terminate—by showing that he was treated differently than similarly situated younger workers. *Id.* at *4. The district court found that Johnson failed to adduce specific evidence showing that he was treated differently than similarly situated younger workers. *Id.* at *6. The district court also found that Johnson failed to point out specific evidence of age-related comments made by Hesse, Johnson's supervisor. *Id.* at *5. The district court concluded that even if Hesse told Johnson that he was too old to continue working, these "comments were stray remarks, remote in time, and unrelated to the decision to terminate Johnson" and, thus, there was no material dispute of fact regarding these comments. *Securitas*, 2012 WL 1247281, at *6. The district court characterized Hesse's comments about Johnson being "Superman" and that he should consider "hang[ing] up his cape" as "age-neutral statements" that did not show any animus. *Id.* at *5. The district court concluded that "Johnson's attempt to prove age animus in his termination [was] based on speculation that age must have been the motivation factor." *Id*. at *6. The district court further stated that "Johnson [had] failed to present evidence which would establish that age was the 'but-for' cause of his termination." *Id.*

Johnson timely appealed.

## II. *Discussion*

In this appeal, Johnson argues that the district court (1) resolved facts in dispute and did not construe controverted facts in Johnson's favor, (2) erred in not addressing Securitas's inconsistent post hoc reasons for terminating Johnson and not considering these reasons as evidence of a pretext for discrimination, and (3) erred

-6-

by not considering that all the facts taken as a whole support the conclusion that Securitas terminated Johnson because of age animus.[2] Johnson contends that the following evidence establishes a prima facie case of age discrimination: (1) Johnson's supervisor, Hess, made age-related comments including: that he was too old, that he "should hang up his Superman cape," comparing Johnson to his 86 year old father, and that he should quit; (2) Hess participated in the decision to terminate Johnson; (3) Parker's confirmation of Johnson's birth year when she terminated him; (4) Johnson's strong employment history; (5) Johnson's continued employment after the accident; (6) and the uniqueness of Johnson's discipline relative to other employees. Johnson highlights that Securitas has terminated no other employee for not reporting an accident immediately. Johnson avers that Securitas created a number of post hoc grounds for his termination that were a pretext for age discrimination. Johnson contends these facts establish a prima facie case of age discrimination against Securitas and that summary judgment should be reversed.

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Johnson v. Carroll*, 658 F.3d 819, 825 (8th Cir. 2011) (quoting *Hayek v. City of St. Paul*, 488 F.3d 1049, 1054 (8th Cir. 2007)). "A dispute about a material fact is genuine if the evidence is such that a reasonable trier of fact could return a decision in favor of the party opposing summary judgment." *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 272 (8th Cir. 1992) (citing *Anderson v. Liberty Lobby*, 477

---

[2]Securitas argues that Johnson waived his argument that he presented a prima facie case of discrimination because it was not addressed in his opening brief. Johnson responded in his reply brief that he did, in fact, properly address the prima facie issue in his opening brief. We find that Johnson sufficiently stated a prima facie case of age discrimination to the district court and thus did not abandon the right to appeal this issue.

-7-

U.S. 242, 248 (1986)).We review a district court's grant of summary judgment de novo. *Carroll,* 658 F.3d at 825.

Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "An age discrimination plaintiff may survive the defendant's motion for summary judgment either by setting out direct evidence of discrimination or by creating an inference of discrimination under the *McDonnell Douglas Corp. v. Green* burden-shifting framework." *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1152 (8th Cir. 2007) (internal citation omitted). To make a prima facie case of age discrimination

> under the ADEA, the plaintiff must ordinarily show that: (1) he is a member of a protected age group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he was discharged; and (4) he was replaced by a younger worker. *E.g.*, *Ziegler v. Beverly Enterprises-Minnesota, Inc.*, 133 F.3d 671, 675 (8th Cir. 1998). Where, as here, the plaintiff's responsibilities were not reassigned to a specific individual, we have said the plaintiff must satisfy the fourth element of the *prima facie* case by showing "age was a factor in the employer's decision to terminate."

*Hitt v. Harsco Corp.*, 356 F.3d 920, 924 (8th Cir. 2004) (citing *Yates v. Rexton, Inc.*, 267 F.3d 793, 799 (8th Cir. 2001)).

> A prima facie case creates a rebuttable presumption of discrimination. *Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894, 897 (8th Cir. 2004). The burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S. Ct. 1817. If the defendant provides such a reason, the presumption disappears, and the burden shifts back to the plaintiff to show that the proffered reason was

-8-

>pretext for age discrimination. *Haas v. Kelly Servs., Inc.*, 409 F.3d 1030, 1035 (8th Cir. 2005). At all times, the ultimate burden of persuasion is on the plaintiff. *Lewis*[ *v. St. Cloud State Univ.*], 467 F.3d [1133,] 1137 [(8th Cir. 2006)].

*Ramlet*, 507 F.3d at 1153.

We have held that where the "[p]laintiff established a prima facie case of discrimination and . . . [d]efendants articulated a legitimate, nondiscriminatory reason [for the employee's rejection]," if "genuine issue[s] of material fact concerning pretext" exist, "the district court err[s] in granting summary judgment in [d]efendants' favor." *Hase v. Mo. Div. of Emp't Sec.*, 972 F.2d 893, 896 (8th Cir. 1992). "It is well-established that the threshold of proof necessary to establish a prima facie case is minimal." *Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018, 1022 (8th Cir. 1998). "'The prima facie burden is not so onerous as, nor should it be conflated with, the ultimate issue' of discriminatory action." *Id.* (citing *Landon v. Nw. Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir. 1995)).

Johnson satisfies elements one and three of a prima facie case of age discrimination because he (1) is over 40 and (2) was discharged. As for the second requirement regarding meeting job expectations, the record contains evidence from which a jury could find that Johnson was meeting Securitas's job expectations prior to the on-site accident. Johnson's supervisor recorded no complaints regarding Johnson's job performance. Securitas's contention that Johnson failed to meet job expectations is based solely on the car accident and the incidents that followed. On this record, Johnson has shown that he performed his job duties satisfactorily or at least he has created a material dispute of fact on the issue.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether

-9-

he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (internal citations omitted).

As for the fourth element of a prima facie case—showing that age was a factor in Securitas's decision to terminate him—Johnson highlights the various comments made by Hesse, in which he pointed to Johnson's advanced age, compared Johnson to his elderly father, and encouraged him to retire. Furthermore, the record indicates that Hesse may have played a role in the decision to terminate Johnson. Viewing the facts in a light most favorable to Johnson, a reasonable jury could find Securitas was motivated to terminate Johnson based on age animus. Therefore Johnson has established a prima facie case of age discrimination.

Securitas, in turn, offers a nondiscriminatory reason for Johnson's termination. It avers that it terminated Johnson because Johnson failed to report the accident in a timely manner, left his post early, and failed to participate in the company investigation. Johnson responds by arguing that factual disputes exist in this case that make summary judgment inappropriate. Specifically, these include whether: (1) Johnson left his shift early; (2) Parker knew Johnson's age when she terminated him and discussed Johnson's birth year during the conversation in which she terminated Johnson; (3) Hesse participated in Johnson's termination or whether Parker was "the sole decision maker"; and (4) similarly situated younger employees were treated differently.

There are at least four material fact disputes in this case. The first is whether Johnson actually left his post prior to the end of his shift. Securitas stated the cause for termination on Johnson's Personnel Action Form as Johnson "was in an accident and left post before end of shift @ 7 am[.] He called field service and stated he was in an accident and on his way home." Johnson disputes Securitas's allegation that his

-10-

shift ended at 8:00 a.m. Johnson contends his shift ended at 7:00 a.m. Whether Johnson actually left his shift early is a material fact relevant to determining whether Johnson's termination was a pretext for age discrimination. Viewing this in a light most favorable to Johnson for the purpose of summary judgment, we must assume that Johnson did not leave his shift early. Second, Securitas states the Human Resources director, Parker, was unaware of Johnson's age when she terminated him, but Johnson responds that they discussed his birth year during the very conversation in which he was terminated. Again, when viewed in a light most favorable to Johnson, we must assume that Parker was aware of Johnson's age. Third, Johnson contends that Hesse played a role in his termination, whereas Securitas contends that Parker was "the sole decision maker." This is a material fact, because Hesse was the source of the alleged age-related comments. Therefore, whether Hesse played a role in Johnson's termination is material to determining whether the termination was motivated by age animus as evidenced by Hesse's comments. For the purpose of summary judgment, we assume that Hesse did play a role in Johnson's termination. Fourth, Johnson alleges that similarly situated Securitas employees, Hesse and Marion, who also had work-related vehicle accidents, were treated differently following their mishaps. If true, this disparate treatment strengthens Johnson's prima facie evidence that age was a factor in his termination. Based on the facts presented in this record, a reasonable trier of fact could find in favor of Johnson and these material fact disputes are best left for the jury. *See Liberty Lobby*, 477 U.S. at 251–52.

Because we conclude that Johnson "adduce[d] enough admissible evidence to raise genuine doubt as to the legitimacy of [Securitas's] motive, even if that evidence did not directly contradict or disprove [Securitas's] articulated reasons for its actions," summary judgment was not proper. *See Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 945 n.8 (8th Cir. 1994). The presence of "genuine issue[s] of material fact concerning pretext" makes summary judgment an inappropriate disposition. *See Hase*, 972 F.2d at 896.

11 of 17

Appellate Case: 12-2129     Page: 11     Date Filed: 08/26/2013 Entry ID: 4068461

III. *Conclusion*

Accordingly, we reverse the judgment of the district court.

BYE, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority's reasoning to the extent it concludes Carlyn Johnson submitted sufficient evidence to raise genuine questions of material fact about each element of a prima facie case of age discrimination. I also agree Securitas articulated legitimate, nondiscriminatory reasons for terminating Johnson's employment. As such, my decision hinges on whether Johnson submitted sufficient evidence to call into question the legitimacy of Securitas's reasons. Unlike the majority, I conclude he did not. Accordingly, I respectfully dissent from the majority's decision to reverse the decision of the district court.

The majority identifies four questions of fact, which it concludes are sufficient to "raise genuine doubt as to the legitimacy of Securitas's motive[.]" Ante at 11. Those are (1) whether Johnson left his post early, (2) whether Securitas treated similarly situated younger employees differently, (3) whether Robert Hesse participated in the decision to terminate Johnson's employment, and (4) whether Sherry Parker was aware of Johnson's age when she terminated him.

Johnson left his post at Rail Logistics at or around 7:00 a.m. on the day in question. Reasoning we are required to accept Johnson's contention the shift ended at 7:00 a.m., the majority concludes a question of material fact exists whether Johnson actually left before the end of the shift. Ante at 10-11. Although relevant, this is the wrong inquiry. "Our precedent establishes that the 'critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge.'" Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996, 1002 (8th Cir. 2012) (quoting McCullough v.

-12-

Univ. of Ark. for Med. Scis., 559 F.3d 855, 861-62 (8th Cir. 2009)).  The evidence indicates Securitas was relying on its contract with Rail Logistics, which expressly sets forth that the pertinent shift was scheduled to end at 8:00 a.m.  App. 120.  None of the evidence submitted by Johnson creates a question of material fact whether the decision makers in good faith believed Johnson had left his post early by leaving the site before that time.

The majority also concludes a question of material fact exists whether Hesse and James Marion, who are both younger than Johnson and had also been involved in job-related vehicle accidents, were treated differently than Johnson.  Ante at 11. Johnson, however, has not submitted sufficient evidence to even raise a question of material fact whether those employees are sufficiently similarly situated to him to warrant comparison.

"At the pretext stage, 'the test for determining whether employees are similarly situated to a plaintiff is a rigorous one.'"     Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 956 (8th Cir. 2012) (quoting Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 853 (8th Cir. 2005)), cert. denied, 133 S. Ct. 1252 (2013).  "[Johnson] must show that [he] and the employees outside of [his] protected group were 'similarly situated in all relevant respects.'"  Id. (quoting Rodgers, 417 F.3d at 853).  "[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Id. (quoting Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000)).  The accidents of Hesse and Marion both have distinguishing circumstances in that they reported their vehicle accidents immediately.  App. 643, 1047.  In addition, there is no evidence whether Hesse or Marion may have left his post early in conjunction with his accident.  Johnson has introduced no contradictory evidence to address those distinguishing circumstances.  Accordingly, as a matter of law, neither Hesse nor Marion is similarly situated to Johnson.

-13-

The remaining questions of fact are whether Hesse participated in the decision to terminate Johnson's employment and whether Parker was aware of Johnson's age when she terminated his employment. Once an employer has articulated a legitimate reason for termination, "the plaintiff can only avoid summary judgment if he or she presents evidence that considered in its entirety, (1) creates a question of material fact as to whether the defendant's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision." Kohrt v. MidAmerican Energy Co., 364 F.3d 894, 897 (8th Cir. 2004) (quoting Hindman v. Transkrit Corp., 145 F.3d 986, 991 (8th Cir. 1998)).

Johnson's only evidence of age animus consists of Hesse's comments, which we must assume were related to Johnson's age. We must also assume Hesse and Charlie Bunch, as Johnson's supervisors, along with Parker, as Securitas's Human Resources Director, collectively decided to terminate Johnson's employment.[3] Johnson offers no direct evidence of the contents of the decision making process. It would be reasonable, however, to infer Hesse, who had a history of making age-related comments about Johnson, made Bunch and Parker aware of Johnson's age. See Hitt v. Harsco Corp., 356 F.3d 920, 923-24 (8th Cir. 2004) ("Like the district court, we give the non-moving party the benefit of reasonable inferences that may be drawn without resorting to speculation."). However, I find nothing in that mere awareness to create a question of material fact whether Securitas's reasons for terminating Johnson's employment were pretextual. Nor do I find anything to create a reasonable inference that age was the determinative factor in their decision to terminate Johnson's employment.

---

[3] Johnson bases his contention Hesse was involved in the decision to terminate his employment on Securitas's initial responses to his interrogatories, which indicated Hesse, Bunch, and Parker collectively made the decision. App. 1082. Securitas relies on a subsequent response indicating Parker was the sole decision maker. Appellee's Br. 17. For the purposes of summary judgment, we must accept Johnson's contention the initial response accurately described those who made the decision.

-14-

Accordingly, I respectfully dissent from the majority's conclusion that the district court erred in granting summary judgment to Securitas.

_____

-15-

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

August 26, 2013

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

      RE: 12-2129  Carlyn Johnson v. Securitas Security Services

Dear Sirs:

      A published opinion was filed today in the above case.

      Counsel who presented argument on behalf of the appellant was Lawrence P. Kaplan, of Saint Louis, MO. The following attorney(s) appeared on the appellant brief; Lawrence P. Kaplan, of Saint Louis, MO., Joshua Michael Avigad, of Saint Louis, MO.

      Counsel who presented argument on behalf of the appellee was Burton D Garland, Jr., of Saint Louis, MO. The following attorney(s) appeared on the appellee brief; Burton D Garland, Jr., of Saint Louis, MO and Heidi Kuns Durr of St. Louis, MO.

      The judge who heard the case in the district court was Honorable Rodney W. Sippel. The judgment of the district court was entered on April 13, 2012.

      If you have any questions concerning this case, please call this office.

      Michael E. Gans
      Clerk of Court

LMT

Enclosure(s)

cc: Lois Law
    MO Lawyers Weekly

      District Court/Agency Case Number(s):  4:10-cv-01162-RWS

## United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

August 26, 2013

Mr. Lawrence P. Kaplan
KAPLAN ASSOCIATES
Suite 1225
101 S. Hanley Road
Saint Louis, MO  63105-0000

 RE:  12-2129  Carlyn Johnson v. Securitas Security Services

Dear Counsel:

 The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00a.m. today. Please hold the opinion in confidence until that time.

 Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc **must** be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

 Michael E. Gans
 Clerk of Court

LMT

Enclosure(s)

cc: Mr. Joshua Michael Avigad
 Ms. Heidi Kuns Durr
 Mr. Burton D Garland Jr.
 Ms. Sarah Smith Kuehnel
 Ms. Erin E. Williams
 Mr. James G. Woodward

 District Court/Agency Case Number(s):   4:10-cv-01162-RWS